ORIGINAL

PATRICK C. CLARY, CHARTERED
Patrick C. Clary
Nevada Bar No. 53
City Center West, Suite 503
7201 West Lake Mead Boulevard
Las Vegas, Nevada 89128
Telephone: 702.382.0813

Attorneys for Plaintiff

FILED       RECEIVED
ENTERED     SERVED ON

2005 MAY 31  P 4:03

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

CV-S-05-0674-RCJ-PAL

KNOCKOUT! SPORTS NETWORK, INC.,
a Nevada corporation,

   Plaintiff,

vs.                                    ) COMPLAINT

MATT A. ROSE, ROBERT A. FREEMAN,
JILL COSTANTINO, FRANC BOZA,
CHRIS ROSE, STEPHEN MAYNARD,
ULTIMATE SPORTS ENTERTAINMENT,
INC., a Nevada corporation, DOES
I-X, inclusive, and ROE CORPORA-
TIONS I-X, inclusive,

   Defendants.

First Claim for Relief

(Federal Securities Violations)

I.

This Court has jurisdiction over the parties to and the subject matter of this case, which arises under (I) 18 U.S.C. §2201, (ii) Sections 3(b) and 4(2) of the Securities Act of 1933, as amended, ("the Securities Act" herein), 15 U.S.C. §§77c(b) and 77d(2), and Regulation D ("Regulation D" herein) promulgated under the Securities Act by the United States Securities and Exchange Commission ("the Commission" herein), 17 C.F.R. §230.501, et seq., (iii) Sections 6 and

1

17 of the Securities Act, 15 U.S.C. §§77e and 77q, (iv) Section 10(b) of the Securities Exchange Act of 1934, as amended ("the Exchange Act" herein), 15 U.S.C. §78j(b), and Rule 10b-5 ("Rule 10b-5" herein) promulgated under the Exchange Act by the Commission, 17 C.F.R. §240.15b-5, (v) Section 15 of the Exchange Act, 15 U.S.C. ¶78o, and (vi) the pendant jurisdiction of this Court. The Plaintiff, Knockout! Sports Network, Inc. ("the Plaintiff" or "the Company" herein) is a Nevada corporation. Defendants Matt A. Rose ("Matt Rose" herein), Robert A. Freeman ("Freeman" herein), Jill Costantino ("Costantino" herein), and Franc Boza ("Boza" herein) are all residents of Clark County, Nevada. Defendant Chris Rose ("Chris Rose" herein), who is the brother of Matt Rose, and Defendant Stephen Maynard ("Maynard" herein) are residents of Los Angeles County, California. Defendant Ultimate Sports Entertainment, Inc. ("the Fraudulent Company" herein) is a Nevada corporation (collectively "the Defendants" herein). The true names or capacities whether individual, corporate, associate or representative or otherwise of the Defendants named herein as Does I-X and Roe Corporations I-X are not known to the Company, which consequently sues the said Defendants by such fictitious names, and the Company will seek leave to amend this Complaint to state their true names and capacities when they have been ascertained.

II.

In March 2003, Matt Rose was engaged as President and chief executive officer of the Company, which was incorporated on February 6, 2002 for the purpose of developing a proposed sports and entertainment complex including a hotel and casino in Las Vegas, Nevada ("the Project" herein). At or near the time of Matt Rose's engagement by the Company, a written agreement ("the Employment

2

Period" herein) was executed by and between the Company and Matt Rose, which included provisions for Matt Rose's confidentiality, non-competition, and non-circumvention for the benefit of the Company ("the Employment Agreement" herein). The Company and Matt Rose maintained a leased office at 4335 Industrial Road, Suite 400, Las Vegas, Nevada ("the Premises" herein). Matt Rose was employed by the Company from March 2003 until his resignation on February 8, 2005.

## III.

During the Employment Period without authorization from the Board of Directors of the Company and otherwise unlawfully and illegally, the following events occurred:

A. Matt Rose caused the Company to issue to him 40,000,000 shares of the common stock of the Company for no consideration.

B. Matt Rose caused the Company to pay him a salary of $6,000 per month during the remaining months of 2003, $10,000 per month for all twelve months in 2004 and for the month of January 2005, and an additional $4,000 for the first week of February 2005 at the time of his resignation. Matt Rose, who wrote and signed all of his own paychecks, failed and refused either to make deductions for withholding or FICA or to make quarterly reports to the Internal Revenue Service. In addition to the so-called salary payments enumerated above, during 2004 Matt Rose also paid himself additional unauthorized payments from the funds of the Company totaling $87,000.

C. Matt Rose also supervised and conducted an offer and sale ("the Securities Offering" herein) of the common stock of the Company and of loan instruments (together "the Securities" herein) to third parties in May 2003 through January 2005 ("the

Securities Offering Period"). The Securities were not registered with the Commission or any state securities agency, and the Securities Offering was not properly in compliance with any statutory exemption from registration. During the Securities Offering Period, approximately 499,300 shares of the common stock of the Company and certain loan instruments were sold to third parties for approximately $2,488,500. During the Securities Offering Period, Matt Rose also issued 600,500 shares (including 200,000 shares issued to Maynard) of the common stock of the Company to business associates, friends and relatives for no consideration.

D. During the Securities Offering Period, Matt Rose paid out of funds of the Company illegal commissions for the sale of the Securities to persons and entities which were not registered broker-dealers of securities or members of the National Association of Securities Dealers, Inc. Such misconduct included but was not limited to Matt Rose's causing the Company to pay an illegal commissions (1) to Freeman for the sale of authorized but unissued shares of the common stock of the Company to Freeman's parents, Mr. and Mrs. Greenslade and (2) to pay Tim Lantz and Harold Martin, neither of whom was or is a registered broker-dealer, for the sale of certain of the Securities. During the Securities Offering Period, salesmen received some twenty-four (24) commissions for the sale of the Securities.

E. Matt Rose forged another of the Company's officer's signature on certain certificates representing shares of the common stock of the Company.

F. Matt Rose caused false minutes of fictitious meetings of

4

the Company's board of directors and stockholders, some of which minutes falsely stated that they were held before Matt Rose became President and chief executive officer of the Company.

G. In April 2004, Matt Rose hired Freeman, who was and is a boyhood friend of Matt Rose and an attorney not licensed to practice law in Nevada, as purportedly full-time in-house general counsel and chief operating officer for the Company. Freeman, whose office was adjacent to Matt Rose's office on the Premises, was paid $7,500 per month from the funds of the Company until Freeman resigned as general counsel and chief operating officer on February 24, 2005.

H. In or about April 2003, Matt Rose hired Costantino, who was his live-in girlfriend, as receptionist, secretary, and bookkeeper for the Company, and she was paid $3,000 per month from funds of the Company until her termination on February 7, 2005 when she received $1,500 severance pay.

I. On or about June 12, 2003, Matt Rose hired Chris Rose (his brother) as the Company's website manager, and he was paid $6,000 per month from the funds of the Company, although Dreamtree Media, a company owned and controlled by Chris Rose, during the same period was also paid $104,567 from the funds of the Company for the same alleged services. Chris Rose was terminated by Matt Rose on or about February 7, 2005 and was paid $3,000 severance pay from the funds of the Company.

J. On or about June 16, 2003, Matt Rose hired Justin Banks ("Banks" herein), who Matt Rose said was his step-son, as an employee of the Company, and, although Banks performed no services for the Company, he received $300 per week from the

5

funds of the Company, which was increased to $400 per week on August 27, 2004 and to $3,000 per month on November 20, 2004. Banks was terminated on February 7, 2004, when he received severance pay of $1,500 from the funds of the Company. During the period of Banks' so-called employment by the Company, Matt Rose caused the Company to pay to Banks, who was not a licensed broker-dealer or salesman of securities, commissions for sale of certain of the Securities, even though Banks was not responsible for any sales of the Securities.

K. From February 20 to April 2, 2004 Matt Rose caused the Company to pay to Karen Rose, a person unknown to other officers and directors of the Company, a total of $24,200.

L. On May 30, 2003, Matt Rose, purportedly on behalf of the Company, executed a written agreement with Maynard relating to a non-existent loan to the Company of $50,000, in which Matt Rose agreed that (1) the Company would pay Maynard "50% of all monies raised from the sale of [the Company's] common stock . . . until 100% of [Maynard's] loan to [the Company] has been repaid," (2) Maynard was to be issued 50,000 shares of the Company's common stock, (3) Maynard was to be issued 50,000 warrants for 50,000 additional shares of the Company's common stock at a price of $1.00 per share, and (4) Matt Rose would personally guarantee the nonexistent loan, "pledging 100% of his commissions earned from any successfully completed Real Estate transaction done with [Maynard] until 100% of [Maynard's] loan to [the Company] has been repaid." In fact, Matt Rose issued 200,000 shares of the Company's common stock to Maynard, for which the Company received no consideration. From August 14,

2003 through to August 14, 2004, Matt Rose paid from the funds of the Company to Maynard the sum of $43,730.02. Although on April 23, 2004, $115,000 in funds from Maynard were deposited in the Company's bank account at Bank of America in Pahrump, Nevada, on April 30, 2004, the $115,000 was wired back to Maynard from the said account at the insistence of Matt Rose.

M. In June 2003, Matt Rose established an office ("the California Office" herein) purportedly for the Company in premises leased by Shiloh Investments a/k/a Friendship Realty, companies owned and controlled by Maynard, located at 879 West 190th Street, Suite 400, Gardena, California 90248, and paid from the funds of the Company, purportedly at the rate of $1.85 per square foot, $2,020 per month for June-August 2003, $2,329.50 per month for September 2003-April 2004, and $1,723.48 for May 2004 plus $810.54 for June 2004, $816.54 for July 2004, $810.54 for August 2004, and $81.05 thereafter when the California Office was closed. In fact, the Company was allocated only a small portion of the California office and was instead paying Maynard's rent for no consideration. During the period that the California Office was open, Matt Rose and other Defendants illegally and unlawfully operated a "boiler room" for the Securities Offering.

N. In or about July 2004, Matt Rose engaged Flangas McMillan Law Group, Attorneys at Law, in Las Vegas, Nevada, as the Company's corporate, securities and trademark lawyers ("the Lawyers" herein), whose services included the preparation of a so-called Private Placement Memorandum dated December 1, 2004 ("the PPM" herein), which was used in the Securities Offering

7

after that date. The Lawyers were paid from Company funds a total of $50,713, of which $40,413 was for the PPM and $10,300 of which was for the trademark work. The Lawyers resigned on February 7, 2005. During the Securities Offering, Matt Rose caused more than 700 copies of the PPM to be sent out via UPS and the U.S. mail.

O. On December 13, 2004, Matt Rose entered into a written agreement with Gary and Deborah Bates ("the Bates" herein) of Las Vegas, Nevada, whereby Matt Rose agreed to sell the Bates 20,000 shares of the common stock of the Company purportedly personally owned by Matt Rose at $5.00 per share for $100,000. In fact, Matt Rose issued and delivered the said 20,000 shares to the Bates from the authorized but unissued common stock of the Company, issued an additional 20,000 shares to the Bates from the same source for no consideration, and pocketed the $100,000.

P. On February 8, 2005, the same date that Matt Rose resigned as President and chief executive officer of the Company, Maynard sent a letter to the Company which stated "that [Maynard's] gift of the Flat screen TV (the "Flat Screen TV" herein) was a gift to Matt Rose personally as an acknowledgement [sic] of our friendship and support of his initiative, and in no way should be considered the property of [the Company]." In fact, on August 5, 2004, the Company issued a check to Good Guys Electronics for $7,632.47 for the Flat Screen TV.

Q. When Matt Rose left the Premises on or about February 8, 2005, he left his key to the Premises with Freeman, Rob Yowell, Dennis Gushue, Heath-Price Kahn, and Sean Pierce, all of whom

had been previously hired by Matt Rose purportedly as independent contractors for the Company, and who Matt Rose allowed to enter and to remain upon the Premises thereafter. At about the same time, Matt Rose gathered together all of the books and records of the Company, including but not limited to all copies of the Employment Agreement ("the Stolen Records" herein), that were on the Premises. Matt Rose took the Stolen Records to an undisclosed location and has failed and refused to return the Stolen Records despite repeated demand therefor.

R. On or about February 28, 2005, Matt Rose and Freeman removed from the Premises all furniture and equipment of any value belonging to the Company, including but not limited to the Flat Screen TV (collectively "the Stolen Equipment" herein). Chris Rose removed and retained a computer belonging to the Company ("the Stolen Computer" herein). Neither the Stolen Equipment nor the Stolen Computer have been returned to the Company despite repeated demands therefor.

S. Immediately after the Lawyers' resignation as attorneys for the Company on February 7, 2005, Matt Rose hired the Lawyers, who then formed the Fraudulent Company, of which Matt Rose immediately became the President and chief executive officer and for which Matt Rose immediately misappropriated most if not all of the Company's intellectual property rights (except for certain copyrights issued to the Company through services of the Lawyers) ("the Stolen Intellectual Property" herein) as well as the Stolen Equipment. Matt Rose has established offices for the Fraudulent Company at 8540 South Eastern Avenue, Suite 200, Las Vegas, Nevada 89123, where the Stolen Equipment is located

and being used. Matt Rose and the Fraudulent Company have been promoting and continue to promote a fraudulent project ("the Fraudulent Project" herein) which is nearly identical to the Project Matt Rose promoted during the Employment Period at the Company. Matt Rose falsely and fraudulently has represented to third parties that the Company was out of business and that the Fraudulent Company was taking over the Project. Matt Rose has also illegally and unlawfully offered to existing and/or purported stockholders of the Company to exchange shares of stock in the Fraudulent Company for their shares of stock in the Company.

T. Matt Rose also established a website for the Fraudulent Company, which, under the category "About Us," on April 12, 2005, contained the following language:

> For more than three years and at a cost of several million dollars, Ultimate Sports Entertainment, Inc. has been in the business of executing the dream of developing the ultimate sports destination, the most extraordinary and recognizable Sports and Entertainment Resort in the World.

By May 11, 2005, the quoted language was removed from the Fraudulent Company's website. However, the website still contains the following language:

> In addition to an extraordinary in-house team, Ultimate Sports Entertainment, Inc. has engaged the following Leaders in their respective fields:
>
> **Builders:** The Perini Building Company
> **Architect:** The Paul Steelman Design Group
> **Public Relations:** Leader Enterprises
> **Attorneys:** The law offices of Flangas and Mc Millan [sic]
> **Management:** The Navegante Group
> (Larry Woolf, CEO of The Navegante Group, is the former Chairman, President and CEO of the MGM Grand) For more information concerning the companies above, see the Team section of this web-site.

The entities listed above (except for (I) Leader Enterprises, to

which Matt Rose had paid $33,188.66 between May 17 and November 15, 2004 from the funds of the Company, and (ii) the Lawyers), had been described in the PPM and advertized elsewhere by Matt Rose, during the Employment Period at the Company, as the Company's "Dream Team."

IV.

The conduct of the Defendants and each of them constitutes violations of the above-referenced registration, disclosure and anti-fraud provisions of the Securities Act, the Exchange Act, Regulation D, and Rule 10b-5.

V.

As a consequence of the foregoing, the Plaintiff is entitled to recover from the Defendants and each of them damages in an amount to be proved at trial, which is not less than $2,500,000.

VI.

It has been necessary for the Plaintiff to engage the services of an attorney to bring and prosecute this action, and, accordingly, the Plaintiff is entitled to recover its reasonable attorney's fees herein.

Second Claim for Relief

(State Securities Violations)

I.

The Plaintiff repeats and realleges the allegations contained in paragraphs I, II, III, V, VI, and VII of the First Claim for Relief hereinabove as though set forth herein *in haec verba*.

II.

The conduct of the Defendants and each of them constitutes violation of the registration, disclosure and anti-fraud provisions

11

of the securities law of the State of Nevada, Sections 90.211, et seq. of Nevada Revised Statutes.

### III.

All of the Defendants and each of them are guilty of oppression, fraud, or malice, express or implied, and, therefore, the Plaintiff is also entitled to recover from the Defendants and each of them punitive damages in an amount to be proved at trial, which is not less than $7,500,000.

## Third Claim for Relief

(Common Law Fraud)

### I.

The Plaintiff repeats and realleges the allegations contained in paragraphs I, II, III, V, and VI of the First Claim for Relief and paragraph III of the Second Claim for Relief hereinabove as though set forth herein *in haec verba*.

### II.

The conduct of the Defendants and each of the constitutes common law fraud.

## Fourth Claim for Relief

(Breach of Contract)

The Plaintiff repeats and realleges the allegations contained in paragraphs I, II, III, and VI of the First Claim for Relief hereinabove as though set forth herein *in haec verba*.

### II.

The conduct of Matt Rose constitutes breach of the Employment Agreement.

### III.

As a consequence of the foregoing, the Plaintiff is entitled to

recover from Matt Rose damages in an amount to be proved at trial, which is not less than $2,500,000.

### Fifth Claim for Relief

(Breach of the Implied Covenant of Good Faith and Fair Dealing)

I.

The Plaintiff repeats and realleges the allegations contained in paragraphs I, II, III, V, and VI of the First Claim for Relief and paragraph III of the Second Claim for Relief hereinabove as though set forth herein *in haec verba*.

II.

The conduct of the Defendants and each of them constitutes breach of the implied covenant of good faith and fair dealing.

### Sixth Claim for Relief

(Breach of Fiduciary Duty)

I.

The Plaintiff repeats and realleges the allegations contained in paragraphs I, II, III, and VI of the First Claim for Relief hereinabove as though set forth herein *in haec verba*.

II.

By their conduct Matt Rose and Freeman breached their fiduciary duties to the Plaintiff.

III.

As a consequence of the foregoing, the Plaintiff is entitled to recover from Matt Rose and Freeman damages and punitive damages in an amount to be proved at trial, which is not less than $2,500,000.

IV.

Matt Rose and Freeman are guilty of oppression, fraud, or malice, express or implied, and, therefore, the Plaintiff is also entitled to

recover from Matt Rose and Freeman punitive damages in an amount to be proved at trial, which is not less than $7,500,000.

### Seventh Claim for Relief

(Conversion)

I.

The Plaintiff repeats and realleges the allegations contained in paragraphs I, II, III, and VI of the First Claim for Relief hereinabove as though set forth herein *in haec verba*.

II.

Matt Rose, Chris Rose, and the Fraudulent Company wrongfully and illegally converted to their own use certain personal property belonging to the Plaintiff, to wit: the Stolen Equipment and the Stolen Computer.

III.

As a consequence of the foregoing, the Plaintiff is entitled to recover from Matt Rose, Chris Rose and the Fraudulent Company damages in amount to be proved at trial.

IV.

Matt Rose, Chris Rose and the Fraudulent Company are guilty of oppression, fraud, or malice, express or implied, and, therefore, the Plaintiff is also entitled to recover from Matt Rose, Chris Rose and the Fraudulent Company punitive damages in an amount to be proved at trial.

### Eighth Claim for Relief

(Mismanagement)

I.

The Plaintiff repeats and realleges the allegations contained in paragraphs I, II, III, and VI of the First Claim for Relief

14

hereinabove as though set forth herein *in haec verba*.

II.

By their conduct Matt Rose and Freeman were guilty of mismanagement of the Plaintiff.

III.

As a consequence of the foregoing, the Plaintiff is entitled to recover from Matt Rose and Freeman damages in an amount to be proved at trial, which is not less than $2,500,000.

IV.

Matt Rose and Freeman are guilty of oppression, fraud, or malice, express or implied, and, therefore, the Plaintiff is also entitled to recover from Matt Rose and Freeman punitive damages in an amount to be proved at trial, which is not less than $7,500,000.

### Ninth Claim for Relief

(Interference with Contractual Relations and Business Opportunity)

I.

The Plaintiff repeats and realleges the allegations contained in paragraphs I, II, III, and VI of the First Claim for Relief hereinabove as though set forth herein *in haec verba*.

II.

By their conduct Matt Rose and the Fraudulent Company wrongfully and illegally interfered with the contractual relations and business opportunity of the Plaintiff.

III.

As a consequence of the foregoing, the Plaintiff is entitled to recover from Matt Rose and the Fraudulent Company damages in an amount to be proved at trial, which is not less than $2,500,000.

. . . .

15

IV.

Matt Rose and the Fraudulent Company are guilty of oppression, fraud, or malice, express or implied, and, therefore, the Plaintiff is also entitled to recover from Matt Rose and the Fraudulent Company punitive damages in an amount to be proved at trial, which is not less than $7,500,000.

### Tenth Claim for Relief

(Unlawful Conspiracy)

I.

The Plaintiff repeats and realleges the allegations contained in paragraphs I, II, III, V, and VI of the First Claim for Relief hereinabove as though set forth herein *in haec verba*.

II.

The conduct of the Defendants and each of them constituted an unlawful conspiracy against the Plaintiff in that the Defendants and each of them were aware that the other Defendants and each of them planned to commit the wrongful acts alleged hereinabove and that the Defendants and each of them agreed with the other Defendants and each of them and intended that the wrongful acts alleged hereinabove be committed.

### Eleventh Claim for Relief

(Libel & Slander)

I.

The Plaintiff repeats and realleges the allegations contained in paragraphs I, II, III, and VI of the First Claim for Relief hereinabove as though set forth herein *in haec verba*.

II.

In the course of the offering and sale of the Fraudulent

1  Company's securities, and at other times, Matt Rose and the Fraudulent
2  Company have published defamatory statements against the Plaintiff,
3  both orally and in writing, and are therefore guilty of committing
4  libel and slander against the Plaintiff.

### III.

As a consequence of the foregoing, the Plaintiff is entitled to recover from Matt Rose and the Fraudulent Company damages in an amount to be proved at trial, which is not less than $2,500,000.

### IV.

Matt Rose and the Fraudulent Company are guilty of oppression, fraud, or malice, express or implied, and, therefore, the Plaintiff is also entitled to recover from Matt Rose and the Fraudulent Company punitive damages in an amount to be proved at trial, which is not less than $7,500,000.

### Twelfth Claim for Relief

(Declaratory Relief)

### I.

The Plaintiff repeats and realleges the allegations contained in paragraphs I, II, III, and VI of the First Claim for Relief hereinabove as though set forth herein *in haec verba*.

### II.

The Plaintiff is entitled to a declaration judgment that (I) the Plaintiff is the sole owner to the exclusion of Matt Rose and the Fraudulent Company of all of the Plaintiff's intellectual properties and personal property and (ii) that all of the shares of the common stock of the Company referred to hereinabove and otherwise issued by or at the instance of any of the Defendants for no consideration are cancelled, null and void, and held for naught.

17

## Thirteenth Claim for Relief

(Injunctive Relief)

I.

The Plaintiff repeats and realleges the allegations contained in paragraphs I, II, III, and VI of the First Claim for Relief hereinabove as though set forth herein *in haec verba*.

II.

As a consequence of the foregoing, the continued actions of Matt Rose and the Fraudulent Company will cause and will continue to cause the Plaintiff immediate and irreparable injury, loss or damages.

III.

Because immediate and irreparable injury, loss or damage will result if Matt Rose and the Fraudulent Company are not enjoined from continuing their actions as aforesaid, the Plaintiff is entitled to a preliminary and permanent injunction, enjoining Matt Rose, the Fraudulent Company, their officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them from continuing to use and to represent that they have the right to use the proprietary rights and other personal property of the Plaintiff and from stating and otherwise representing that the Company is out of business.

WHEREFORE, the Plaintiff prays for judgment as follows:

1. On the First Claim for Relief, in favor of the Plaintiff and against the Defendants and each of them for damages in an amount to be proved at trial, which is not less than $2,500,000;

2. On the Second Claim for Relief, in favor of the Plaintiff and against the Defendants and each them for damages and punitive damages in amounts to be proved at trial, which are not less than $2,500,000

and $7,500,000, respectively;

3. On the Third Claim for Relief, in favor of the Plaintiff and against the Defendants and each of them for damages and punitive damages in amounts to be proved at trial, which are not less than $2,500,000 and $7,500,000, respectively;

4. On the Fourth Claim for Relief, in favor of the Plaintiff and against Matt Rose for damages in an amount to be proved at trial, which is not less than $2,500,000;

5. On the Fifth Claim for Relief, in favor of the Plaintiff and against the Defendants and each of them for damages and punitive damages in amounts to be proved at trial, which are not less than $2,500,000 and $7,500,000, respectively;

6. On the Sixth Claim for Relief, in favor of the Plaintiff and against Matt Rose and Freeman for damages and punitive damages in amounts to be proved at trial, which are not less than $2,500,000 and $7,500,000, respectively;

7. On the Seventh Claim for Relief, in favor of the Plaintiff and against Matt Rose, Chris Rose, and the Fraudulent Company for damages and punitive damages in amounts to be proved at trial.

8. On the Eighth Claim for Relief, in favor of the Plaintiff and against Matt Rose and Freeman for damages and punitive damages in amounts to be proved at trial, which are not less than $2,500,000 and $7,500,000, respectively;

9. On the Ninth Claim for Relief, in favor of the Plaintiff and against Matt Rose and the Fraudulent Company for damages and punitive damages in amounts to be proved at trial, which are not less than $2,500,000 and $7,500,000, respectively;

10. On the Tenth Claim for Relief, in favor of the Plaintiff and

1  against the Defendants and each of them for damages and punitive
2  damages in amounts to be proved at trial, which are not less than
3  $2,500,000 and $7,500,000, respectively;

4      11. On the Eleventh Claim for Relief, in favor of the Plaintiff
5  and against Matt Rose and the Fraudulent Company for damages and
6  punitive damages in amounts to be proved at trial, which are not less
7  than $2,500,000 and $7,500,000, respectively;

8      12. On the Twelfth Claim for Relief a declaration judgment that
9  (I) the Plaintiff is the sole owner to the exclusion of Matt Rose and
10 the Fraudulent Company of all of the Plaintiff's intellectual
11 properties and personal property and (ii) that all of the shares of
12 the common stock of the Company referred to hereinabove and otherwise
13 issued by or at the instance of any of the Defendants for no
14 consideration are cancelled, null and void, and held for naught;

15     13. On the Thirteenth Claim for Relief for a preliminary and
16 permanent injunction, enjoining Matt Rose, the Fraudulent Company,
17 their officers, agents, servants, employees, and attorneys, and all
18 persons in active concert or participation with them from continuing
19 to use and to represent that they have the right to use the
20 proprietary rights and other personal property of the Plaintiff and
21 from stating and otherwise representing that the Company is out of
22 business and enjoining them from other wrongful acts;

23     14. For the Plaintiff's reasonable attorney's fees herein plus
24 costs of this action; and

25     15. For such other and further relief as the Court may deem just
26 and appropriate in the premises.

27                                            PATRICK C. CLARY, CHARTERED
28                                           By_____
                                              Patrick C. Clary
                                              Attorneys for Plaintiff

Law Offices of
**PATRICK C. CLARY, CHARTERED**
7201 West Lake Mead Boulevard, Suite 503
Las Vegas, Nevada 89128
Tel: 702.382.0813 - Fax: 702.382.7277